JAMES H. AND IRENE BURRELL v.
COMMISSION

ROBERT C. AND ALICE C. BURRELL v.
COMMISSION

Bernard F. Bednarz, Salem, represented the plaintiffs.

Richard A. Uffelman, Assistant Attorney General, Salem, represented the defendant.

Decision for plaintiffs rendered December 5, 1968.

EDWARD H. HOWELL, Judge.

The two cases involved herein have been consolidated for decision. Both involve the same issue.

The facts involved were stipulated by the parties as follows:

"* * * that during 1966 James H. Burrell and Robert C. Burrell were transacting business in Salem, Oregon, as a partnership, and that in the latter part of 1966 the Burrell partnership was incorporated in a tax-free exchange pursuant to Section 351 of the Internal Revenue Code of 1954 and ORS 317.231(5) and ORS 316.281(4);

"* * * that at the date of the incorporation the partnership carried a bad debt reserve on its books and that when the partnership was incorporated,

all of the accounts receivable of the partnership and the reserve for bad debts of the partnership were transferred to the corporation, along with all other business assets.

"* * * * * *"

The parties agree that the change from the partnership to the corporation was a tax-free exchange under both the federal and state statutes mentioned in the stipulation.[1] The disagreement arises from the decision of the tax commission that in such an exchange any reserve for bad debts carried on the books of the transferor partnership must be included in income of the transferor.

The specific question which the parties have presented is whether the court should follow the decision of the United States Tax Court and the ruling of the Commissioner of Internal Revenue which favor the tax commission or follow the 9th Circuit Court of Appeals which has held that the reserve for bad debts was not taxable income to the transferor at the time of incorporation.

In 1946 the United States Tax Court in *Geyer, Cornell & Newell, Inc. v. Commissioner,* 6 TC 96 (1946), held that a reserve for bad debts cannot be

---

[1] Both ORS 317.231(5) in the Corporate Excise code and ORS 316.281(4) of the Personal Income Tax code read the same.

ORS 317.231(5):

"(5) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation. For purposes of this subsection, stock or securities issued for services shall not be considered as issued in return for property. In determining control, for purposes of this subsection, the fact that any corporate transferor distributes part or all of the stock which it receives in the exchange to its shareholders shall not be taken into account."

transferred to any other entity and any balance in such a reserve is to be restored to income in the year when the need for maintaining the reserve ceases.

In 1962 the Commissioner of Internal Revenue made the above position specifically applicable to nontaxable exchanges under § 351 of the Internal Revenue Code of 1954. Rev Rul 62-128, 1962-2 Cum Bull 139. This is the position which the Internal Revenue Service and the tax commission have consistently followed. However, the 9th Circuit Court recently rejected the Commissioner of Internal Revenue's approach in this area and reversed the Tax Court in *Schmidt's Est. v. Comm.*, 355 F2d 111 (9th Cir 1966), 17 AFTR2d 242, 66-1 USTC ¶ 9202, a case involving a tax-free incorporation under § 351 of the Internal Revenue Code. There the taxpayer transferred his business to a corporation which continued to conduct the same business. The accounts receivable were transferred subject to the reserve for bad debts and in computing the net value of the business the reserve was deducted from the face amount of the accounts receivable. The Commissioner of Internal Revenue contended that as the taxpayer no longer needed the bad debt reserve because the accounts receivable had been transferred to the corporation, the amount of the reserve constituted taxable income to the transferor. The court stated:

"We think that the Tax Court's and the Commissioner's position disregards the economic realities of the situation. Before the transfer of the business, taxpayer owned all of its assets and was obligated to pay all of its liabilities. He was permitted to estimate in advance and charge against income accrued the losses that would be sustained in collecting the accounts receivable instead of waiting until an actual loss was incurred and charging it off as a bad debt. It is conceded that the reserve

was reasonable. This means, in economic terms, that the value of the accounts receivable was not their face amount, but that amount less the reserve. It was this value that was transferred to the corporation. * * * It is quite true that the taxpayer no longer 'needed' the reserve, but it is certainly not true, in any economic sense, that he has recovered its value. What he has recovered, in relation to the receivables, is pieces of paper—stock certificates—representing their net value, not their gross value.

"* * * * *

"* * * We think that, whether the sale be for cash or stock, no income is received, unless the consideration received exceeds the net amount of the receivables. * * *" 355 F2d at 113-114; 17 AFTR2d at 244.

The United States Tax Court disagreed with the decision of the 9th Circuit in *Bird Management, Inc. v. Commissioner*, 48 TC 586 (1967), and held that as the balance in the bad debt reserve was no longer needed the reserve must be restored to income.

Again, in 1968 in *Max Schuster v. Commissioner*, 50 TC 98, the Tax Court refused to follow the *Schmidt* decision. The Tax Court was involved with a § 351 tax-free incorporation and held that the bad debt reserve must be restored to income of the transferor. However, three judges dissented and agreed with the decision of the 9th Circuit Court in the *Schmidt* case. They emphasized that the legislative purpose of § 351 of the Internal Revenue Code was to allow the incorporation of unincorporated businesses without tax consequences.

The parties have stipulated that when the partnership was incorporated all the accounts receivable of the partnership and the reserve for bad debts were transferred to the corporation. Consequently, the ac-

counts receivable were transferred subject to the reserve for bad debts and were transferred for their net value. *Schmidt's Est. v. Commissioner, supra.*[2]

■ There are logical arguments to support the decision of the Tax Court and the 9th Circuit Court. This court prefers the reasoning of the 9th Circuit in *Schmidt* and subscribes to the following statement of Judge Simpson, one of the dissenting judges of the Tax Court in *Schuster*:

> "To avoid distorting the income of the business and to carry out the purpose of section 351, I would hold that the transferor's unused bad debt reserve is carried over to the transferee corporation. As a result, the transferor would not be taxed on the unused reserve, and the transferee would not be allowed a deduction for building up a reserve. The transferee would stand in the shoes of the transferor so that the corporation would be required to continue to use the reserve method for treating bad debts, unless it secured the approval of the Commissioner to change such method." 50 TC at 104.

The order of the tax commission is set aside.

---

[2] The United States District Court for the northern division of Alabama in a recent case decided in June, 1968, has followed the *Schmidt* decision. *Birmingham Trust Nat'l. Bank v. U. S.,* — Fed Supp — (ND Ala 1968), 22 AFTR2d 5202, 68-2 USTC ¶ 9513.